IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JAMES JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 22-CV-270-TCK-SH |
| HIRERIGHT, LLC and | ) | |
| TODD SIMO, MD, | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

**OPINION AND ORDER**

Before the Court is the Motion to Enforce Settlement Agreement filed by the Defendants, HireRight, LLC, and Todd Simo, MD. (Doc. 29,30). Plaintiff filed a Response (Doc. 39), and Defendants filed a Reply (Doc. 41).

**I. Background**

Plaintiff began working for TransForce, Inc. on September 9, 2016. Plaintiff's position as a driver required Plaintiff to maintain a Commercial Driver's License ("CDL") for operating Commercial Vehicles ("CMVs") on public roads under the auspices of the Federal Motor Carrier Safety Administration "(FMCSA"), along with the Department of Transportation ("DOT"). On August 20, 2020, Plaintiff submitted to a random drug test at the request of his employer, TransForce, Inc. TransForce selected Dr. Simo to serve as the Medical Review Officer ("MRO"). Dr. Simo was employed as the Chief Medical Officer and Managing Director of Transportation for Defendant HireRight, LLC.

Plaintiff's urine specimen was collected at Concentra Medical Center, then shipped to and tested at the Clinical Reference Laboratory, a federally accredited laboratory. On initial testing, Plaintiff's specimen screened positive for THCA at a level of 74 ng/mL Because Plaintiff's THCA

levels exceeded the federally defined cutoff of 50 ng/mL, the specimen was sent for definitive confirmation testing pursuant to 49 C.F.R. § 40.87(b). The confirmation test confirmed Plaintiff's specimen was positive for THCA at a level which was almost three times the regulated cut-off of 15 ng/mL.

Per DOT regulation, Clinical Reference Laboratory sent the results and chain of custody form to Dr. Simo as the MRO selected by TransForce to review Plaintiff's specimen. HireRight's Medical Review Office attempted to reach Plaintiff to schedule a verification interview regarding his positive result and to obtain any legitimate medical explanations he may have for the result. HireRight called Plaintiff on three consecutive days, but did not reach him, or receive a call back. After Plaintiff failed to respond, HireRight staff contacted TransForce's Designated Employee Representative requesting them to ask Plaintiff to contact the Medical Review Office. Pursuant to DOT regulations, because Plaintiff failed to contact them, HireRight reported Plaintiff's marijuana positive result to TransForce.

On September 10, 2020, the FMCSA sent a letter to Plaintiff informing him that a drug and alcohol program violation was entered into his driver record with the FMCSA Commercial Driver's License Drug and Alcohol Clearinghouse, and therefore he "must not operate a commercial motor vehicle or perform other safety-sensitive functions for any employer until he has completed the required steps in the return-to-duty process as describe in Part 40, Subpart O." On September 14, 2020, TransForce terminated Plaintiff's employment.

On May 17, 2022, Plaintiff filed suit against HireRight and Dr. Simo in the District Court of Tulsa County, Oklahoma, alleging that they negligently reported Plaintiff's positive drug test results to TransForce. On June 23, 2022, the HireRight Defendants removed the action to this Court. On April 13, 2023, the HireRight Defendants moved for summary judgment.

During the course of this litigation, HireRight discovered that Plaintiff had also sued TransForce in the District Court of Tulsa County on September 10, 2021. TransForce removed the state court action to this Court on October 15, 2021. See *Johnson v. TransForce, Inc*., Case No.21-CV-448-TCK-CDL (N.D. Okla.) at Doc. 2. In his Petition, Plaintiff alleged, as here, that TransForce requested that he submit to a random drug test and that the results were positive. Plaintiff further alleged, as here, that TransForce terminated him in September 2020 for violating federal regulations and company policy. That case settled for an undisclosed sum in or around September 2022. *See* Settlement Conference Report, *Johnson v. TransForce, Inc*., Case No. 21-CV-448-TCK-CDL. (Doc. 28).

Upon discovering Plaintiff's lawsuit and settlement with TransForce, HireRight served a subpoena on TransForce requesting a copy of Plaintiff's employment file as well as a copy of its Settlement Agreement with him. HireRight received a copy of the Settlement Agreement on April 5, 2023.

The Settlement Agreement provides that Plaintiff "fully releases and discharges…any and all claims, causes of action, suits, [and] controversies … including … any claim arising from or relating to …Plaintiff's employment with TransForce, the termination of that employment…or any circumstances related thereto." The Settlement Agreement further provides that the "Released Parties" included "TransForce…and all of their respective past…[and] present…independent contractors."

Plaintiff also agreed that he would not initiate or prosecute "any claim, cause of action, charge, suit, controversy, or demand that this Settlement Agreement lawfully waives." If Plaintiff does initiate or prosecute an excluded cause of action, the Settlement Agreement provides that the prevailing party would be entitled to fees and costs."

3

On March 26, 2012, TransForce entered into a services agreement with HireRight under which HireRight agreed to furnish it with screening reports and related services. Paragraph 9(j) of the Services Agreement, titled "*Independent Contractors*," provides that the "parties will perform their obligations as independent contractors" and that nothing therein should "be deemed to create any association, partnership, joint venture, or relation of principal and agent between the parties."

Plaintiff acknowledged that the HireRight Defendants were independent contractors in the Complaint filed in this case. Plaintiff alleges: HireRight, LLC, under contract with TransForce, Inc., administered Plaintiff's drug test, …and at all times hereto, Dr. Todd Simo, MD, was employed as the Chief Medical Officer and Managing Director of Transportation for Defendant HireRight, LLC." Complaint ¶¶ 7, 18.

**II. Analysis**

A district court "may summarily enforce a compromise settlement agreement …when the settlement agreement appears to be valid on its face and no legal defense to enforcement is present. *Reid v. Graybeal*, 73 F.R.D. 626, 627-28 (W.S. Okla. 1977); see also *United States v. Hardage*, 982 F.2d 1491, 1496-97 (10th Cir. 1993). Further, a "settlement document is a contract and is construed using ordinary principles of contract interpretation." *Anthony v. United States*, 987 F.2d 670, 673 (10th Cir. 1993). Thus, under Oklahoma law, the "language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Okla. Stat. tit. 15, §154. If the language of a settlement agreement is clear and without ambiguity, the Court is to interpret it as a matter of law. *Scrivner v. Sonat Exploration, Co.*, 242 F.3d 1288, 1291 (10th Cir. 2001).

In this case, Plaintiff's Settlement Agreement is clear and unambiguous. Plaintiff agreed to relinquish "any claim arising from or relating to … Plaintiff's employment with TransForce and

the termination of that employment" against the "Released Parties." "Released Parties" include "independent contractors."

An independent contractor is one who "engages to perform a certain service for another, according to is own manner and method, free from control or direction of his employer in all matters connected with the performance of service, except as to the result or product of work." See *Express Bus, Inc. v. Oklahoma Emp. Sec. Comm'n.*, 157 P.3d 1180, 1182 (Okla. Civ. App. 2007). That is what occurred in the instant case. The HireRight Defendants "perform[ed] a service for another" (i.e. TransForce), "free from [its] control or direction." The services agreement between HireRight and TransForce states that the 'parties will perform their obligations as independent contractors" and that nothing therein should "be deemed to create any association, partnership, joint venture, or relation of principal and agent between the parties."

Further, Plaintiff's claims arise from, and relate to, his employment with TransForce. Plaintiff's claims against HireRight are based entirely on: (1) the drug test TransForce requested he take; and (2) TransForce's alleged termination of his employment because of the results reported to them by the HireRight Defendants. These same allegations were the basis of his state court Petition against TransForce. Therefore, Plaintiff released his claims against the HireRight Defendants because they are independent contractors covered by the Settlement Agreement.

The fact that the HireRight Defendants were neither signatories to the Settlement Agreement, nor specifically identified by name, does not render the release inapplicable to Plaintiff's claims. While Oklahoma follows the "specific identity" rule, which requires non-settling tortfeasors to be "designated by name or otherwise specifically identified" in a release to receive its protection, the rule is not without limits. See *Moss v. City of Oklahoma City*, 897 P.2d 280, 288 (Okla. 1995). As the Tenth Circuit held in *McKissick v. Yuen*, 618 F.3d 1177, 1194 (10th

Cir. 2010), "the rule does not require that every released party be identified by name in some voluminous appendix dwarfing the release itself." *Id.* at 1194. Instead, the key determination to be made is whether there is some "semblance of specificity" in the language of the releases "before a non-settling tortfeasor is discharged." *Id.*, citing *Moss*, 897 P.2d at 288.

Here, Plaintiff knew that the HireRight Defendants, as the ones who reported his testing results to TransForce, belonged to a discernable group in the release ---independent contractors of TransForce. The parties' intent must be ascertained from the unambiguous agreement itself. Okla. Stat. tit. 15, §155; *Occidental Life Ins. Co. of Cal. V. Marmaduke Corbyn Agency*, 187 F.2d 553, 555 (10th Cir. 1951).

### III.   Conclusion

For the reasons set forth above, the Court finds Defendants are independent contractors entitled to the protections afforded such entities under the terms of Plaintiff's Settlement Agreement with TransForce. Accordingly, pursuant to the terms of the Settlement Agreement the Court grants Defendants' Motion to Enforce the Settlement Agreement, dismisses this action with prejudice, and awards them the fees and costs incurred defending this action. Defendants may file a motion for their fees and costs in accordance with Local Civil Rules 54-1 and 54-2 within 21 days of this Order.

**IT IS SO ORDERED this 21st day of July, 2023.**

TERENCE C. KERN
United States District Judge